WILLIAM KAPELSKI, JR., Plaintiff-Appellee, *v.* THE ALTON & SOUTHERN RAILROAD *et al.*, Defendants-Appellants.

Fifth District No. 75-171

Opinion filed January 12, 1976.—Rehearing denied March 10, 1976.

38

G. J. MORAN, J., specially concurring.

Dixon, Starnes, Nester, McDonnell & Stegmeyer, of Belleville, for appellant Missouri Pacific R.R. Co.

Walker & Williams, P.C., of Belleville, for appellant Alton & Southern R.R.

Cohn, Carr, Korein, Kunin & Brennan, of East St. Louis (Rex Carr, of counsel), for appellee.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

Plaintiff, William Kapelski, Jr., filed a two-count complaint in the circuit court of St. Clair County. The first count alleged that defendant Alton & Southern Railroad was liable under the Federal Employers' Liability Act (45 U.S.C. 51 *et seq.*) for injuries he sustained on July 6, 1970, during the course of his employment by said railroad. The second count alleged that defendant Missouri Pacific Railroad was liable for negligence in maintaining a railroad crossing which was the proximate cause of further injuries suffered on August 1, 1970 by the plaintiff. The plaintiff puportedly joined the two counts in one complaint because he was "unable to differentiate the extent and degree of injury attributed to each defendant." After a jury trial verdicts were returned against each defendant. The jury assessed damages in the amount of $175,000; $70,000 against defendant Alton & Southern Railroad and $105,000 against defendant Missouri Pacific Railroad. Post-trial motions by each defendant were denied. Thereafter separate appeals to this court were perfected by each defendant.

■■ Before considering the merits of the contentions raised by each of the defendants we must first address the plaintiff's motion to dismiss the appeal. The plaintiff's motion to dismiss is based upon the fact "that defendants-appellants have failed to comply with the requirements of Supreme Court Rule 326 in that they have not timely filed the report of proceedings with this reviewing court." In defendants' objections to plaintiff's motion to dismiss they alleged that a certificate in lieu of record was timely filed pursuant to Supreme Court Rule 325 (Ill. Rev. Stat. 1973, ch. 110A, par. 325), that the report of proceedings was timely filed in the trial court, and that plaintiff "took it upon himself to file what now appears to have been only the common law record." We find it unnecessary to determine which party ultimately had the responsibility of filing the report of proceedings since it clearly appears that neither the parties nor this court has been prejudiced by the delay in filing the report of proceedings. In view of the plaintiff's failure to demonstrate any prejudice and the short duration of the delay in filing the report of proceedings we have decided to deny plaintiff's motion to dismiss and reach the merits of the appeal.

On appeal defendant Missouri Pacific contends that it was deprived of its right to a fair trial on the issue of liability and on the issue of damages. Defendant Alton & Southern, who admitted liability, contends that it was deprived of a fair trial on the issue of damages. Since the issues raised by defendant Alton & Southern are concerned solely with the assessment of damages, we shall first discuss the alleged errors de-

fendant Missouri Pacific claims prejudiced its trial on the issue of liability.

The evidence presented in the trial court, albeit disputed, lends itself to the following analysis. The plaintiff was injured, to a greater or lesser extent, while performing his duties as an employee of defendant Alton & Southern. Alton & Southern admitted liability for this incident, but questioned the extent of the injuries incurred by the plaintiff. While allegedly laboring under the pain and discomfort of this injury, the plaintiff had occasion to drive his 750 c.c. motorcycle. During the operation of this motorcycle the plaintiff crossed one of the railroad tracks maintained by defendant Missouri Pacific. According to the plaintiff, the automobile immediately preceding him dislodged one of the wooden railroad ties at the crossing. The plaintiff's motorcycle struck this tie and was thrown into the air. Although the motorcycle came down on its wheels, the plaintiff claims that this occurrence aggravated the injuries to his back he had previously sustained while employed by Alton & Southern. The plaintiff's action against Missouri Pacific was premised on the negligent maintenance of the crossing by Missouri Pacific. Within this context defendant Missouri Pacific claims that the trial court erred in its admission of certain testimony elicited by plaintiff.

Defendant Missouri Pacific first claims that the trial court erred in permitting plaintiff to testify to an admission of liability allegedly made by a "claim agent" of Missouri Pacific. The plaintiff was the first witness to testify. He testified that while recuperating in a hospital from the injuries he aggravated at the railroad crossing, he was approached by F. R. Longo, a "claim agent" of Missouri Pacific. After responding affirmatively to the question: "Did you have a discussion with him as to the circumstances of the accident?", plaintiff was asked: "Did he tell you what, if any, responsibility that—." At this point counsel for Missouri Pacific objected and requested permission to approach the bench. Out of the hearing of the jury counsel for Missouri Pacific stated, among other things, that his objection was based on the fact "that this man, Longo, as a claim agent had no authority to make such an admission that would be binding upon the railroad—." Apparently, this objection was overruled since plaintiff was permitted to ask the same question without offering any evidence on Longo's authority to make admission on behalf of Missouri Pacific. A motion to strike the answer, "He [Longo] told me Missouri-Pacific was responsible for the accident," was overruled by the trial court.

■■ As a general rule admissions are inadmissible as hearsay when made by a person who is not in privity with the party against whom

such are introduced. (*Callaghan v. Myers*, 89 Ill. 566; *Brotherhood of Railroad Signalmen v. Zoning Board of Appeals*, 348 Ill.App. 106, 108 N.E.2d 43.) Thus, in order to introduce a statement or act by an agent or employee as an admission it must *first* be shown (1) that he was such an agent or employee (*Washburn v. Terminal Railroad Association*, 114 Ill.App.2d 95, 252 N.E.2d 389), (2) that such statement or act was made or done in and about a matter over which he had actual or apparent authority (*Burgard v. Mascoutah Lumber Co.*, 6 Ill.App.2d 210, 127 N.E.2d 464), and (3) that he spoke or acted under or by virtue of his authority as such agent or employee (*City of Chicago v. Jewish Consumptives Relief Society*, 323 Ill. 389, 154 N.E. 117). While an agent is competent to testify as to his agency or authority, the fact of agency or authority, when disputed or denied, must ordinarily be established by evidence of the acts or conduct of the principal or his statements to the agent or third persons. (*Merchants' National Bank v. Nichols & Shepard Co.*, 223 Ill. 41, 79 N.E. 28.) Neither the fact nor the extent of the agency can be proved by evidence of the purported agent's past declarations asserting agency. (4 Wigmore, Evidence § 1078, at 176 (Chadbourn rev. ed. 1972); McCormick on Evidence § 267, at 642 (2nd ed. 1972); 5 Callaghan's Illinois Evidence § 10.78, at 428 (1964); Gard, Illinois Evidence Manual, Rule 174, at 201-02 (1963).) As stated in *Holbeck v. Illinois Bankers Life Assurance Co.*, 318 Ill.App. 296, 47 N.E.2d 721:

> "The law is well settled in Illinois that an agent cannot confer power on himself and his agency or authority cannot be established by showing what he said or did. [Citations.]" (318 Ill.App. 296, 304.)

See *King v. Chicago, Burlington & Quincy R.R. Co.*, 235 Ill.App. 401. See also *Beccue v. Rockford Park District*, 94 Ill.App.2d 179, 236 N.E.2d 105.

■■ In the instant case plaintiff's counsel failed to lay any foundation concerning the scope and extent of Longo's agency before eliciting testimony concerning the alleged admission from the plaintiff. In fact, at the time such testimony was elicited the sole "evidence" of Longo's employment by Missouri Pacific was supplied by a question propounded by counsel for the plaintiff. While this question was not objected to and the counsel for Missouri Pacific was willing to characterize Longo as a "claim agent" for Missouri Pacific, counsel for Missouri Pacific expressly denied that Longo had the authority to make an admission of responsibility on behalf of Missouri Pacific. Cognizant of this denial the trial court should have required proof on the scope and extent of Longo's authority before admitting plaintiff's testimony. (*E.g., Grubb v. Milan*, 249 Ill. 456, 94

N.E. 927.) In the absence of such proof it was error to admit such testimony over the objection of the Missouri Pacific. Since the trial court did not condition the admission of this testimony to subsequent proof or otherwise reserve its ruling, we need not determine if plaintiff subsequently established that the extent and scope of Longo's authority was sufficient for Longo to make binding admissions of responsibility on behalf of Missouri Pacific. We do note, however, that the only subsequent "evidence" of Longo's authority was Longo's own testimony which, as we stated earlier, is insufficient to establish such authority.

The foregoing conclusion is in no way premised upon considerations of either the *res gesta* exception to the hearsay rule or the principle that a witness may not give his opinion on the ultimate issue in the case. The facts herein present remove the instant case from the perimeter of either rule.

Defendant Missouri Pacific next contends that the trial court erred in permitting plaintiff, over objection, to state an opinion regarding the condition of the "lag screws" in a wooden tie. After plaintiff testified that "There was [*sic*] two lag bolts that had come up above the surface of the tie and was [*sic*] bent over and was [*sic*] straight and shiney [*sic*] *from wear and tear*" (emphasis added), counsel for Missouri Pacific objected. He stated the following basis for his objection, "It is based upon speculation and conjecture. I don't object to the portion of it where he indicated how far the screws were, but I think the rest of it is pure speculation." This objection was overruled by the trial court. On appeal Missouri Pacific contends that the emphasized portion of this testimony was the plaintiff's opinion and should have been stricken since it invaded the province of the jury. Plaintiff counters by arguing that Missouri Pacific's objection was insufficient to raise the issue of whether this testimony invaded the province of the jury.

■■■ As a general rule a specific objection is limited to the ground or grounds specified and waives any ground not specified. (*E.g., People ex rel. Blackmon v. Brent,* 97 Ill.App.2d 438, 240 N.E.2d 255.) The purpose of this rule is to disclose the nature of the objection, inform the trial court as to the particular frailty, and enable the party offering the objectionable testimony to confront the objection. (See 6 Callaghan's Illinois Evidence § 16.07 at 204-06 (1964), and collected cases cited therein.) Mindful of the purpose behind the waiver rule, we find that, within the context of this case, Missouri Pacific's objection was sufficient to inform the trial court that the plaintiff's remarks were based upon his personal opinion, and not his observation. The objection even directed the trial court's attention to the conclusionary portion of plaintiff's testimony. We, therefore, hold that this objection was not waived.

■■ Albeit we agree with plaintiff that the cause of the present condition of the "lag screws" did not require expert testimony, we do find that plaintiff, as a nonexpert witness, was not entitled to present his opinion on what he believed caused their present condition. (31 Am. Jur.2d *Expert and Opinion Evidence* § 147, at 705 (1967).) As we stated in *State Farm Mutual Automobile Insurance Co. v. Short*, 125 Ill.App.2d 97, 103, 260 N.E.2d 415, 418:

> "Generally, the nonexpert witness may not give his opinions or conclusions, but must confine his testimony to a report of facts."

We did, however, note the following exception to this general rule:

> "* * * it is well-established that when it is not practicable to place before the jury all the primary facts in such a way as to enable the jury to form an intelligent conclusion, witnesses who have had means of personal observation may state their opinions and conclusions, formed from such facts and circumstances as come under their observation. The ground upon which such opinions are held to be admissible is the impossibility or difficulty of reproducing the data observed by the witnesses." (125 Ill.App.2d 97, 103, 260 N.E.2d 415, 418.)

We do not find the plaintiff's statement of opinion to fall within this exception. Here the plaintiff was able to describe, objectively, the present condition of the "lag screws." Combined with this testimony were numerous photographs of the railroad crossing. Two of these photographs were taken by plaintiff shortly after the accident and, according to the plaintiff, "correctly represent[ed] the condition and position of the ties at the time of the accident." While neither of these photographs were close-up pictures of the "lag screws," one (plaintiff's exhibit no. 2) did show the bent condition of one "lag screw" and the protruding aspect of several other "lag screws." If plaintiff considered this photograph insufficient to depict the condition of the "lag screws" this photograph could have been enlarged. In view of this evidence we conclude that the plaintiff possessed no "special knowledge" which would entitle him to present his opinion concerning the cause of the present condition of the "lag screws." Consequently, it was error for the trial court to admit such testimony.

■■ Defendant Missouri Pacific also contends that the trial court "erred in overruling defendant's objections to the testimony of Harold Hoepfinger regarding the cause of the condition of the lag screws and whether another type of lag screw might have been used." Missouri Pacific first claims that the trial court erred in permitting Hoepfinger to answer the question: "Have you found in your years of repairs these truck crossings * * * maintaining these crossings since 1938, that heavy truck traffic

using the highway causes ties, lag screws to break?" Missouri Pacific objected to the question "as based on speculation." After plaintiff's counsel stated "there is no speculation here," the trial court allowed the witness to answer "only if he knows." Missouri Pacific now claims that this question assumed facts not in evidence. Since, however, the objection stated by Missouri Pacific was insufficient to inform the trial court of this objection, we deem such objection waived. *People ex rel. Blackmon v. Brent*, 97 Ill.App.2d 438, 240 N.E.2d 255.

Missouri Pacific next contends that the trial court erred in permitting Hoepfinger to answer questions concerning the use of thicker or thinner lag screws. The basis for this contention is that the plaintiff failed to establish that other "lag screws" were available. We find it unnecessary to discuss this argument since the record reflects that Hoepfinger was testifying to the hypothetical question, "And if they [Missouri Pacific] had chosen to give you lag screws of a thinner circumference and much less heavy you would use those * * *" when Missouri Pacific objected "unless it is established that there were certain lag screws available or were at the time of the accident." The question was not directed to available technology, but rather to Hoepfinger's indiscriminate use of the equipment he was given. In fact, the question concerned thinner screws which would have been less suitable. It followed a line of inquiry in which Hoepfinger stated that there was nothing to prevent him from using thicker lag screws, that he, Hoepfinger, had nothing to do with what type of screw is used, that he used the material supplied by his superiors, and that he would use whatever type of "lag screw" his superiors chose to give him. Since no objections were interposed to any of these preceding questions, we find no error in the trial court's ruling.

Missouri Pacific contends that the trial court erred in giving two instructions proffered by the plaintiff. Defendant Alton & Southern joins in objecting to one of these instructions. These errors have been waived by defendants' failure to abstract *all* the instructions. *Dempski v. Dempski*, 27 Ill.2d 69, 187 N.E.2d 734; *Gillespie v. Norfolk & Western Ry. Co.*, 3 Ill.App.3d 779, 278 N.E.2d 420; *Bear v. Holiday Inns of America, Inc.*, 1 Ill.App.3d 786, 275 N.E.2d 457.

This concludes our review of the issues Missouri Pacific asserts as grounds entitling it to a new trial on the issue of liability. In summary, we have concluded that the trial court committed error in permitting plaintiff to testify to Longo's alleged admission of responsibility on behalf of Missouri Pacific without proving the extent and scope of Longo's authority and in permitting plaintiff to state his opinion on the cause of the present condition of the "lag screws."

We reviewed the standards for appellate review to determine if

error is harmless or prejudicial in *Cargnino v. Smith*, 17 Ill.App.3d 831, 308 N.E.2d 853. Therein we stated,

> "In *Duffy v. Cortesi* (1954), 2 Ill.2d 511, 119 N.E.2d 241, our Supreme Court stated: 'Where error is shown to exist, it will compel reversal, unless the record affirmatively shows that the error was not prejudicial. (Crane Co. v. Hogan, 228 Ill. 338.)' 2 Ill.2d at 517.
>
> In *Both v. Nelson* (1964), 31 Ill.2d 511, 202 N.E.2d 494, the Supreme Court said: 'It is not every error, of course, that will require a reversal. Where it appears that an error did not affect the outcome below, or where the court can see from the entire record that no injury has been done, the judgment or decree will not be disturbed. [Citations.] But where the case is a close one on the facts, and the jury might have decided either way, any substantial error which might have tipped the scales in favor of the successful party calls for reversal. (Edwards v. Hill-Thomas Lime & Cement Co., 378 Ill. 180; Chicago, Burlington and Quincy Railroad Co. v. Warner, 108 Ill. 538.)' 31 Ill.2d at 514." (17 Ill. App.3d 831, 833-34.)

Being unable to say that "the record affirmatively shows that error was not prejudicial" as required by *Duffy v. Cortesi* or as stated by *Both v. Nelson* that the errors did not tip the scale in plaintiff's favor, we conclude that these errors require reversal of the judgment entered against Missouri Pacific and remandment for a new trial.

We next consider defendant Alton & Southern's contention that it was denied a fair trial on the issue of damages. The jury assessed damages in the amount of $70,000 against Alton & Southern. Alton & Southern first claims that the trial court erred in giving one of plaintiff's instructions. As noted earlier in this opinion, the failure to abstract all the instructions constituted a waiver of this issue.

Alton & Southern next contends that the trial court erred in overruling its objection to plaintiff's reference to the effect of inflation in his closing argument. Alton & Southern cites *Raines v. New York Central R.R. Co.*, 129 Ill.App.2d 294, 263 N.E.2d 895, in support of its contention that "evidence" of future inflationary trends is improper. In *Raines* the appellate court concluded that the use of opinion evidence concerning future inflationary trends and the difficulty in hedging against inflation served to prejudice the jury in its deliberations and should have been excluded. Our Supreme Court reversed the appellate court in *Raines v. New York Central Railroad Co.*, 51 Ill.2d 428, 283 N.E.2d 230, *cert. denied*, 409 U.S. 983, 34 L.Ed.2d 247, 93 S.Ct. 322. It did so without reaching the propriety of the admission of evidence concerning inflation.

Instead, the court held that there was "other proper evidence" sufficient to support the verdict. A similar approach was followed by our Supreme Court in *Meador v. City of Salem*, 51 Ill.2d 572, 284 N.E.2d 266. Again, the court found sufficient "proper evidence" to support the verdict. (Compare *Hoffman v. Sterling Drug, Inc.* (3d Cir. 1973), 485 F.2d 132.) It thus appears that before "evidence" of future inflationary trends may even be considered as error, a reviewing court must determine that the verdict is not supported by "other proper evidence."

Likewise, for this court to grant a new trial on the issue of damages on the basis of an improper and allegedly inflammatory argument by counsel for plaintiff the record must show some resulting prejudice. While we believe counsel's comment that "I have a lot of malpractice insurance, he can sue me and collect all those damages" was grossly improper, since an objection to such comment was sustained and the jury was instructed to disregard it, reversal and remandment must be predicated on a finding of resulting prejudice to the defendants. (See *Nelson v. Union Wire Rope Corp.*, 31 Ill.2d 69, 199 N.E.2d 769; *Whiteside v. Evers*, 13 Ill.App.3d 1089, 302 N.E.2d 254; *Bruske v. Arnold*, 100 Ill.App. 2d 428, 241 N.E.2d 191, *aff'd*, 44 Ill.2d 132, 254 N.E.2d 453.) This is particularly true when the action accrues under the Federal Employers' Liability Act (45 U.S.C. 51 *et seq.*). *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 1 L.Ed.2d 493, 77 S.Ct. 443; *Mitchell v. Toledo, Peoria & Western R.R. Co.*, 4 Ill.App.3d 1, 279 N.E.2d 782; *Woodruff v. Pennsylvania R.R. Co.*, 52 Ill.App.2d 341, 202 N.E.2d 113; *McCorkel v. Pennsylvania R.R. Co.*, 32 Ill.App.2d 193, 177 N.E.2d 369.

▟▟ The ultimate question is whether either of the alleged errors operated to the prejudice of Alton & Southern or otherwise inflated the verdict returned by the jury. Considering the evidence presented including that of medical expenses incurred, of wages lost, of the reduction of anticipated earnings over the plaintiff's lifetime, of pain and suffering, and of the restrictions on any strenuous physical activity, which supports the jury's verdict, as well as competent testimony which attributes a substantial portion of such damages to Alton & Southern, it is our conclusion that neither of the errors here presented would justify a reversal of the $70,000 verdict returned against Alton & Southern. It does not appear from the amount of the verdict returned against Alton & Southern that such verdict was influenced by the statements complained of or was the result of passion or prejudice. (*Affleck v. Chicago & North Western Ry. Co.* (7th Cir. 1958), 253 F.2d 249; *Avance v. Thompson*, 320 Ill.App. 406, 51 N.E.2d 334, *rev'd on other grounds*, 387 Ill. 77, 55 N.E.2d 57.) Consequently, on the record before this court we cannot substitute our judgment as to the proper amount to be awarded for

that of the jury. See *Underwood v. Pennsylvania R.R. Co.*, 62 Ill.App.2d 134, 210 N.E.2d 347.

For the reasons stated the judgment entered on the jury's verdict is affirmed insofar as it relates to defendant Alton & Southern Railroad. As to the defendant Missouri Pacific Railroad, however, the judgment is reversed and this cause is remanded for a new trial.

Affirmed in part, reversed in part, remanded with directions.

CARTER, J., concurs.

Mr. JUSTICE GEORGE J. MORAN, specially concurring:

I concur in the majority opinion, except that portion which holds that the trial court erred in holding that the plaintiff erroneously testified that the lag bolts were straight and shiny from wear and tear.